**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LARRY J. SYKES,** | ) |
| **11800 Twin Lakes Drive, No. 711** | ) |
| **Beltsville, Maryland 20705-3170,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Civ. Action No.** |
| **v.** | ) |
| | ) |
| **MICHAEL CHERTOFF,** | ) |
| **Secretary Of Homeland Security** | ) |
| **Department of Homeland Security** | ) |
| **Washington, D.C. 20528,** | ) |
| **Defendant.** | ) |
| | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**Preliminary Statement**

1.)  This is an action by plaintiff, Larry J. Sykes, an African American male who served with distinction as the Special Agent in Charge of the U.S. Secret Service's Johnson Protective Division ("JPD") until the actions that gave rise to this Complaint.

2.)  The function of JPD is to provide protection to the wife of former President Lyndon Johnson, Claudia Taylor "Lady Bird" Johnson, and her primary residence.  Mr. Sykes served as Special Agent in Charge of JPD from April of 2003 until his discriminatory demotion, and involuntary relocation and reassignment, under pain of termination, as one of three Assistant Special Agents in Charge at the Secret Service Rowley Training Center, effective September 4, 2005.

3.) Mr. Sykes' mid-year performance appraisal immediately preceding defendant's discriminatory acts attested to his superior performance while in charge of JPD. As it stated:

> SAIC Larry Sykes has performed his duties leading the division in an exemplary manner. His leadership and organizational skills are evident. He is a true professional and a tireless worker.
>
> SAIC Sykes continues to demonstrate his ability to lead and to make decisions. He offers sound advice and guidance to the division's personnel ensuring a safe and secure environment for all protectees. He takes the necessary steps to effectively and efficiently use human resources and other assets.
>
> SAIC Sykes is a proactive manager who constantly communicates with headquarters, ensuring that the Office of Protective Operations is fully informed on current issues.

4.) Fifteen months after this appraisal, Mr. Sykes was removed from his position as Special Agent in Charge of JPD, demoted to the position of Assistant Special Agent in Charge, and reassigned and relocated involuntarily.

5.) The Secret Service officials responsible for these and other discriminatory acts against Mr. Sykes are the former Deputy Director for Protective Operations Mark Sullivan and former Deputy Assistant Director for Protective Operations Thomas Grupski, officials who took the discriminatory actions at issue in this suit while stationed in Washington, D.C.

6.) The pretextual basis for removing Mr. Sykes as Special Agent in Charge of JPD, demoting him to the level of Assistant Special Agent in Charge, and relocating and reassigning him involuntarily under pain of termination was Mr. Sykes' supposed

improper response to the actions of several insubordinate, emotionally disturbed, and potentially threatening employees under his supervision.

7.)  In truth, the actions of Mr. Sullivan and Mr. Grupski were a pretext to discriminate against Mr. Sykes on account of his race.  Mr. Sykes' proposed response to the employees under his supervision was appropriate in all respects, and his alleged managerial deficiencies that supposedly provided the basis for demoting and reassigning Mr. Sykes were the very same managerial attributes that provided the basis for his superlative performance appraisal quoted in above paragraph 3.

8.)  This case challenges the adverse employment actions visited upon Mr. Sykes on account of his race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, and seeks:  a.) declaratory and injunctive relief vitiating Mr. Sykes' reassignment and his demotion and prohibiting defendant from discriminating against him again; b.) Mr. Sykes' reinstatement as Special Agent In Charge of JPD or in a similar position at a duty station of his preference commensurate with plaintiff's background, skill, and experience; c.)compensatory damages; d.) equitable relief; and e.) an award of the attorneys' fees and costs incurred in the prosecution of this action and the administrative proceeding which preceded it.

## Parties, Jurisdiction, And Venue

11.) Plaintiff Larry J. Sykes is an African American man who was, at all times relevant until his demotion and involuntary reassignment, the supervisory Special Agent In Charge of the Johnson Protective Division of the U.S. Secret Service. Mr. Sykes resides at the address recited in the caption of this Complaint.

12.) Defendant Michael Chertoff is the Secretary of Homeland Security, the Cabinet level official who heads the Department of Homeland Security, and is sued in his official capacity only. The U.S. Secret Service is a component of the Department of Homeland Security, a department in the Executive Branch of the federal government, and its mission includes, but is not limited to, protecting the current and former Presidents and Vice Presidents of the United States and their families, places of business, and residences.

13.) Jurisdiction of this Court is based upon 28 U.S.C. §1332; and 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-5(c)). Venue lies in this judicial district pursuant to 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000-5(f)(3)), because the discriminatory actions of defendant that are at issue here occurred in this district.

## Statement Of Facts

### Background

14.) Mr. Sykes joined the U.S. Secret Service on June 13, 1983, following a successful career as a law enforcement officer with the Indiana State Police.

15.) Mr. Sykes' first position with the Secret Service was as Special Agent in the Indianapolis Indiana Field Office. Over the coming years, Mr. Sykes held progressively more demanding positions, including service on the President Ronald Reagan Protective Division; the Albert Gore Vice Presidential Protective Division; the Richard Cheney Vice Presidential Protective Division; and investigations and undercover work in Los Angeles, California and Chicago, Illinois.

16.) Mr. Sykes was competitively selected as the Special Agent in Charge of the Johnson Protective Division ("JPD") in April of 2003, the position he held until the actions that gave rise to this suit. The primary function of JPD is to provide protection to the wife of former President Lyndon Johnson, Claudia Taylor "Lady Bird" Johnson, and her primary residence, and to assist Mrs. Johnson as needed in carrying out functions relating to her status and service as former President Johnson's wife.

17.) As Special Agent in Charge, Mr. Sykes was the senior-most managerial official in JPD. Subject only to minimal supervision by a member of the Senior Executive Service at the national Protective Operations Division, Mr. Sykes was

responsible for planning, controlling, directing and coordinating the work of professional, technical and administrative support personnel engaged in carrying out the protective program of JPD.

18.) In his former position as Special Agent in Charge, except for minimal review at the national level, Mr. Sykes had final authority over the operations, budget, and security of JPD, which is headquartered in Austin, Texas, as well as all personnel actions relating to its operations.   Mr. Sykes had ultimate supervisory responsibility over 18 employees assigned to JPD, and enjoyed final and discretionary authority over JPD's operations including, but not limited to, determining the manner for protecting the wife former President Lyndon Johnson at her two residences; disciplining employees; and conducting the business of JPD both internally and externally.

19.) A position as Special Agent in Charge in the U.S. Secret Service carries with it exceptional exposure and opportunity for advancement within the agency, and is a widely respected and desirable position within the agency.   Special Agents in Charge routinely advance to other positions within the U.S. Secret Service, either at the national level or other Special Agent in Charge positions.

20.) In addition, federal law enforcement officers participate in a retirement system that requires them to retire by age 57 and permits them to retire at age 50.   Secret Service agents who complete their service successfully at the Special Agent in Charge level have excellent opportunities in positions

in security after their Secret Service employment, either in the
private corporate world or at other federal agencies.

21.) Furthermore, under the new pay system that the Secret
Service is in the process of implementing, the base salary of a
Special Agent in Charge will exceed the salary of an Assistant
Special Agent in Charge.

## Statement of the Case

22.) One of the significant managerial challenges that
faced Mr. Sykes in April of 2003 upon his appointment as the
Special Agent in Charge of JPD was the assignment of several
insubordinate, emotionally disturbed, and potentially threatening
employees under his supervision.

23.) Among these employees was the Division's
Administrative Officer, who suffered a debilitating emotional
breakdown in 2004, which included radical mood swings; crying for
no apparent reason; unexcused absences; and compulsive behavior.

24.) Mr. Sykes directed JPD to respond swiftly upon
learning of its former Administrative Officer's emotional
instability and possible alcohol abuse by placing her on
administrative leave, revoking her security clearance, and
putting her on the "do not admit" list to the Division
Headquarters.

25.) Mr. Sykes' handling of the foregoing situation
provided the basis for his Outstanding mid-year performance
appraisal in January 22, 2004.

26.) The Division's former Administrative Officer was not the only employee under Mr. Sykes' supervision who presented exceptionally challenging supervisory issues.

27.) Upon his initial reassignment to JPD in April of 2003, Mr. Sykes learned that one of the Special Agents under his supervision had begun fixating on the tragedy at Columbine High School, apparently because his daughter was a student there. This agent repeatedly expressed the view that his family's continuous problems were somehow due to the Secret Service putting him in a position from which he was not able to immediately respond to his family's physical and emotional needs.

28.) This agent also began fixating on the September 2001 terrorist bombing in New York City, and wore a pin from the New York Police Department commemorating September 11th in the place where his U.S. Secret Service lapel pin belonged, the pin which all Secret Service agents are required to wear unless they are in an undercover status.

29.) Over time, this agent's behavior became disrespectful, insubordinate, and erratic. On one occasion, Mr. Sykes had to forcefully order him to stand down to prevent the agent from disregarding the directions of a physician examining Mrs. Johnson and taking her to a hospital emergency room. The agent falsely claimed that his Hippocratic Oath as an emergency medical technical required him to take Mrs. Johnson to a hospital against her will if necessary.

30.) By the end of 2004, this agent repeatedly exhibited agitated, threatening, and insubordinate behavior, and filed for bankruptcy due to the consumer debt he had accumulated.

31.) In 2005, this agent and two others produced and hung a threatening montage composed of a gun range target, plastic knives, and several mock Secret Service Memos on the bulletin board in Mrs. Johnson's residence, an area where family members and JPD staff were able to view the display.  The three agents involved each signed the mock memo read list, and it was clear from the outset that they were responsible for it and meant to taunt and intimidate other agents, as well as management.

32.) The montage included a Secret Service shooting range target depicting a male subject on the front side; on the back side, it displayed plastic knives taped to the back of the subject pointing to different locations of the anatomy.  It also included comments such as fun for the whole family; stab your way to the top; front for target practice, back for promotion; and ouch that's below the belt.

33.) The mock Secret Service Memoranda hung by these three agents referred to violence in the workplace.  The Memoranda also suggested that someone's emotional stress level might be so great that Secret Service weapons might be used to harm employees in Mrs. Johnson's home.

34.) One of these three agents also began circulating Memoranda with exceptionally hostile and threatening comments. One stated that: "It is impossible to determine who will assault

coworkers" and there is a "strong correlation between Service employees and the precursors of workplace violence, and the easy access of agents to lethal weapons"

### Actions Leading Up and Related To Mr. Sykes' Demotion and Directed Reassignment

35.) Mr. Sykes reported each of the incidents identified above to the Deputy Director for Protective Operations Mark Sullivan and/or Deputy Assistant Director Thomas Grupski, the officials at the Secret Service national Headquarters to whom Mr. Sykes reported. They presented an immediate and potentially dangerous situation to JPD and they were perceived as such by employees under Mr. Sykes' supervision.

36.) Mr. Sykes planned to take appropriate action in response to each of these incidents and would have done so.

37.) However, without justification, Mr. Sullivan and Mr. Grupski interfered with Mr. Sykes' exercise of supervisory authority over these agents and instead directed him to prepare a memorandum concerning these incidents.

38.) In a Memorandum dated April 11, 2005, Mr. Sykes complied with this request, fully documented the agents' actions, and completely explained his proposed response.

39.) Despite his having done so, Mr. Grupski and Mr. Sullivan directed Mr. Sykes to take no action.

40.) On April 29, 2005, Mr. Grupski and Mr. Sullivan arranged for Mr. Sykes' name to be placed on a Secret Service "bid list," the mechanism by which Special Agents in Charge and other senior management agents in the Secret Service seek

promotion and request reassignment.  Mr. Sykes name was listed on it with his demotion and transfer, even though Mr. Sykes was not interested in transferring and had not placed his name on the bid list.

41.) In an attempt to justify demoting and involuntarily reassigning Mr. Sykes after the fact, Mr. Sullivan and Mr. Grupski decided to have Mr. Grupski, accompanied by a subordinate agent Robert Buster, interview JPD staff directly, between April 27 and May 2, 2005.  During these interviews, Mr. Grupski repeatedly dismissed staff members' justifiable fears of violence by these agents.

42.) At the direction of Mr. Grupski and/or Mr. Sullivan, on May 5, 2005, Mr. Buster prepared a memorandum which stated that Mr. Sykes had supposedly exaggerated the danger posed by these agents.  Mr. Grupski and Mr. Sullivan then relied upon these "findings" as a pretext for demoting Mr. Sykes and reassigning him involuntarily, even though they had done so the previous month.

43.) Earlier, Mr. Grupski and Mr. Sullivan also manipulated the Secret Service inspection process, by which the operations of regional and field offices are periodically evaluated, in an effort to justify taking adverse employment action against Mr. Sykes.

44.) On December 22, 2004, Mr. Sykes appeared before an Inspection panel, which included Mr. Grupski, and was briefed on

11

the results of an inspection of JPD that had been completed earlier that month.

45.) A final overall rating of "GOOD" was given to JPD during the informal out briefing when the Inspection concluded.

46.) However, Mr. Sullivan and Mr. Grupski arranged for the results JPD's inspection to be downgraded twice, first to FAIR and then to an "R" recommendation against management, meaning Mr. Sykes.

47.) Mr. Grupski and Mr. Sullivan later cited the "R" recommendation as a basis for taking adverse employment action against Mr. Sykes.

## Adverse Employment Actions

48.) Effective September 4, 2005, Mr. Sykes was demoted to the level of Assistant Special Agent in Charge and involuntarily reassigned, under pain of termination, to the Secret Service Rowley Training Center in Laurel, Maryland.

49.) Although Mr. Sykes' grade level was not effected, Mr. Sykes's duties and responsibilities were significantly diminished upon his demotion to Assistant Special Agent in Charge. Once demoted, Mr. Sykes was no longer the head of an organizational component of the Secret Service; became one of three Assistant Special Agents in Charge at the Rowley Training Center; reported to a Deputy Special Agent in Charge; supervised five rather than 18 employees; had neither operational nor budgetary control or responsibility for a Division; and no longer interacted with Secret Service officials at a national level.

50.) As a result of his demotion, Mr. Sykes no longer has the same opportunities for professional advancement within and outside of the Secret Service, no longer has the same opportunities for professional exposure within and outside of the Secret Service; and no longer has the same opportunities for senior level employment in private industry or in other federal agencies upon his retirement from federal law enforcement which, by law, he must do no later than when he turns 57 years of age.

51.) Although Mr. Sykes' demotion to Assistant Special Agent in Charge did not adversely change his base pay, the Secret Service is in the process of converting senior managers to a new pay system under which, as has been planned, will no longer be on the General Schedule.  Once this new pay system is implemented, the salary of an Assistant Special Agent in Charge will be lower than that of a Special Agent in Charge.

52.) Mr. Sykes' involuntary reassignment under pain of termination also adversely affected the terms and conditions of his employment by requiring that he relocate involuntarily from Austin, Texas, where Mr. Sykes had established residence and planned to continue living until his retirement, to Laurel, Maryland.

## Exhaustion Of Administrative Remedies

53.) Mr. Sykes timely initiated the informal administrative EEO complaints process concerning the employment actions which comprise the subject matter of this Complaint on May 12, 2005.

54.) On July 19, 2005, Mr. Sykes timely filed a formal administrative complaint of discrimination concerning the employment actions which comprise the subject matter of this Complaint.

55.) Mr. Sykes has exhausted the administrative remedies available to him, because more than 180 days have elapsed since he filed his formal administrative complaint of discrimination without the issuance of a Final Agency Decision.

### COUNT I
### (Race Discrimination)

56.) Plaintiff repeats the allegations contained in paragraphs 1 through 55 above, as though fully set forth here.

57.) Effective September 4, 2005, defendant demoted plaintiff two levels, from the position of Special Agent in Charge of the Secret Service Johnson Protective Division to one of five Assistant Special Agents in Charge of the Rowley Training Center.

58.) Upon his demotion to one of five Assistant Special Agents in Charge of the Rowley Training Center, plaintiff's duties and responsibilities were significantly diminished; his opportunities for professional advancement within and outside of the Secret Service were significantly diminished; his opportunities for professional exposure within and outside of the Secret Service were significantly reduced; and his opportunities for senior level employment in private industry or in other federal agencies upon his retirement from federal law enforcement

which, by law, he must do no later than November 23, 2010, at 60 years of age.

59.) Once defendant implements its new pay system, plaintiff's demotion from Special Agent in Charge to Assistant Special Agent in Charge will adversely change his base pay and the lifetime annuity to which he will be entitled upon retirement.

60.) In demoting plaintiff from the position of Special Agent in Charge of the Johnson Protective Detail to one of five positions as an Assistant Special Agent in Charge of the Rowley Training Center, defendant took adverse employment action against plaintiff.

61.) In taking the foregoing adverse employment action, defendant discriminated against plaintiff on account of his race, which is African American.

62.) Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-2)), in taking the foregoing adverse employment action against plaintiff.

63.) Defendant's violation of plaintiff's civil rights caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

## COUNT II
### (Race Discrimination)

64.) Plaintiff repeats the allegations contained in paragraphs 1 through 63 above, as though fully set forth here.

65.) Effective September 4, 2005, defendant involuntarily reassigned plaintiff from the Secret Service Johnson Protective Division in Austin, Texas, to the Secret Service Rowley Training Center in Laurel, Maryland, and, thereby, significantly and adversely affected the terms, conditions, and privileges of plaintiff's employment.

66.) Plaintiff's involuntary reassignment under pain of termination adversely affected the terms and conditions of his employment by requiring that he relocate involuntarily from Austin, Texas, where Mr. Sykes had established residence and planned to continue living until his retirement, to Laurel, Maryland.

67.) In reassigning plaintiff involuntarily under pain of termination, defendant took adverse employment action against plaintiff.

68.) In taking the foregoing adverse employment action, defendant discriminated against plaintiff on account of his race, which is African American.

69.) Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-2)), in taking the foregoing adverse employment action against plaintiff.

70.) Defendant's violation of plaintiff's civil rights

caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

## COUNT III
### (Race Discrimination)

71.) Plaintiff repeats the allegations contained in paragraphs 1 through 70 above, as though fully set forth here.

72.) Effective September 4, 2005, defendant demoted plaintiff two levels, from the position of Special Agent in Charge of the Secret Service Johnson Protective Division in Austin, Texas, and reassigned plaintiff involuntarily to one of five positions as an Assistant Special Agent in Charge of the Secret Service Rowley Training Center in Laurel, Maryland.

73.) Upon his demotion from the position of Special Agent in Charge of the Johnson Protective Detail to one of five Assistant Special Agents in Charge of the Rowley Training Center, plaintiff's duties and responsibilities were significantly diminished; his opportunities for professional advancement within and outside of the Secret Service were significantly diminished; his opportunities for professional exposure within and outside of the Secret Service were significantly reduced; and his opportunities for senior level employment in private industry or in other federal agencies upon his retirement from federal law enforcement which, by law, he must do no later than November 23, 2010, at 60 years of age.

74.) Once defendant implements its new pay system, plaintiff's demotion from Special Agent in Charge to Assistant

Special Agent in Charge will adversely change his base pay and the lifetime annuity to which he will be entitled upon retirement.

75.) Plaintiff's involuntary reassignment forced plaintiff to relocate from Austin, Texas, where Mr. Sykes had established residence and planned to continue living until his retirement, to Laurel, Maryland, under pain of termination.

76.) In demoting plaintiff and reassigning plaintiff involuntarily under pain of termination, defendant took adverse employment action against plaintiff.

77.) In taking the foregoing adverse employment action, defendant discriminated against plaintiff on account of his race, which is African American.

78.) Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-2)), in taking the foregoing adverse employment action against plaintiff.

79.) Defendant's violation of plaintiff's civil rights caused him to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

## PRAYER FOR RELIEF

Wherefore, plaintiff Larry J. Sykes respectfully requests that the Court enter judgment in his favor and award him the following relief.

A.    An Order declaring that defendant violated plaintiff's civil rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, and restraining and enjoining defendant from further violations.

B.    An Order reinstating plaintiff as Special Agent In Charge of the Johnson Protective Division or in a similar position in a duty station of plaintiff's choosing commensurate with plaintiff's background, skill, and experience.

C.    Compensatory damages in an amount to be determined at trial to compensate plaintiff for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, career loss, loss of professional reputation, and loss of enjoyment of life caused by defendant's unlawful actions.

D.    Record correction and expunction.

E.    The attorneys' fees and costs incurred by plaintiff.

G.    Such other relief as may be just and appropriate.

## JURY DEMAND

Plaintiff requests a trial by jury of all issues so triable.


Respectfully submitted,


Robert C. Seldon, Esq.
  D.C. Bar No. 245100
Molly E. Buie, Esq.
  D.C. Bar No. 483767
Robert C. Seldon & Associates, P.C.
1319 F Street, N.W., Suite 305
Washington, D.C.  20004
(202) 955-6968



By:  _____
     Counsel for Plaintiff

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Larry J. Sykes    88888 | Michael Chertoff, Secretary of Homeland Security |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF     88888<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF<br>LAND INVOLVED |

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Robert C. Seldon, Esq.; Molly E. Buie, Esq.
Robert C. Seldon & Associates, PC
1319 F Street, NW, Suite 305
Washington, DC 20004 (202) 955-6968

ATTORNEYS (IF KNOWN)

CASE NUMBER   1:07CV00042

JUDGE: Rosemary M. Collyer

DECK TYPE: Employment Discrimination

DATE STAMP: 01/09/2007

JURY ACTION

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- O 1 U.S. Government Plaintiff
- O 3 Federal Question (U.S. Government Not a Party)
- ◉ 2 U.S. Government Defendant
- O 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES
FOR PLAINTIFF

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| O A. Antitrust | O B. Personal Injury/ Malpractice | O C. Administrative Agency Review | O D. Temporary Restraining Order/Preliminary Injunction |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>Social Security:<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>Other Statutes<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| O E. General Civil (Other) OR | | O F. Pro Se General Civil | |
|---|---|---|---|
| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

③

| ○ **G. Habeas Corpus/ 2255** | ⊗ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Discrimination in federal employment over demotion and reassignment, Title VII, 42 U.S.C. 2000e-16.

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** 3,000,000.00 **JURY DEMAND:** | Check YES only if demanded in complaint YES ☒ NO ☐ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE **January 9, 2007**   SIGNATURE OF ATTORNEY OF RECORD   *NOT SIGNED*

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.